UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No. 22-cr-15 (APM) |
| | : | |
| **KENNETH HARRELSON** | : | *Previously Included in* |
| | : | |
| Defendant | : | Case No. 21-cr-28 (APM) |
| | : | |

### ORDER ON KENNETH HARRELSON' MOTION FOR REQUIRED DISCLOSURE OF EXCULPATORY INFORMATION

The Defendant Kenneth Harrelson came before the Court upon Kenneth Harrelson's Motion For Required Disclosure Of Exculpatory Information on August _____, 2022, and upon the Court's consideration of the pleadings and representations of the parties, and oral argument, the Court orders as follows:

IT APPEARING TO THE COURT THAT the Defendant Kenneth Harrelson needs to be able to participate in his own defense including by reviewing and analyzing information that the Government is required to produce as potentially exculpatory information to which the Defendant is entitled to pursuant to *Brady v. Maryland, 373 U.S. 83 (1963),* and

IT APPEARING TO THE COURT THAT if there are any records or evidence of the aforementioned, Kenneth Harrelson would be entitled to present those documents or evidence at trial to endeavor to show that he did not cause the Joint Session of Congress to be obstructed, hindered, stopped, or recessed nor attempted to do so, did not engage in seditious conspiracy, damaged no property, and did not aid and abet others, and

IT APPEARING TO THE COURT THAT Harrelson is entitled to the disclosures requested even if only for the purpose of investigating to locate witnesses to call at trial, and

1

IT APPEARING TO THE COURT THAT the jury could potentially consider documents, evidence, or facts from the U.S. Capitol Police as to the reasons for the recess and evacuation of the Joint Session of Congress rather than conjecture, implication, or insinuation of any unidentified influence by Kenneth Harrelson.

NOW, THEREFORE, LET IT BE ORDERED AND ADJUDGED THAT the Complainant United States of America and the prosecution by the United States Department of Justice, including law enforcement agencies the Federal Bureau of Investigation and U.S. Capitol Police, must disclose to the Defendant Kenneth Harrelson, by counsel, and in logic and equity equally to all the co-Defendants the following records and information:

   a. As to the mechanized 17-foot high Columbus Doors and corresponding East Rotunda doors, at the East central section of the U.S. Capitol building, (1) who did open ("breach") the doors, when, and how, (2) a timeline of when the bronze Columbus doors were closed or open on January 6, 2021, (3) why the Columbus Doors were left open at any time that day if there was a perceived threat, (4) the brand of the mechanism which opens the Columbus Doors, (5) the type and model of the mechanism, (6) technical specifications of the Columbus Doors including brand and models of machinery involved, and technical specifications and details of the controls for operating the doors. (7) access by Defendant's experts to inspect and test the doors, and have access to information, while they examine and document the electronics in and around the door, the annex, and the exterior of the door and to inspect the monitoring facility where those signals or communications are received, and (8) whether these doors were damaged from the outside which could exonerate Defendant Harrelson of breaking in or breaching the Capitol from the outside of those doors.

b. Harrelson's expert witnesses, to the extent properly disclosed and otherwise allowed, to tour and view the U.S. Capitol building and surrounding grounds which may include any buildings or grounds on the Congressional campus affected by discovery of pipe bombs or the movement of crowds or perceived threats of crowd control.

c. Precise identification of (1) where the boundaries of any alleged restricted area were as of the time when the Oath Keeper Defendants reached the claimed boundaries, including (2) identifying when the prosecution alleges Harrelson and other Oath Keepers arrived at such claimed boundaries of the restricted area, and (3) what signs were visible at that time in such locations that would notify Harrelson and his co-Defendants that any area had been restricted and exactly where the boundaries were of such restricted area.

d. With regard to allegations that the Oath Keepers led "the attack" on the U.S. Capitol, provide any and all information including video recordings and photographs precisely identify (1) who were the first people to approach the U.S. Capitol so as to "attack" it, (2) in what manner did people "attack" the Capitol, (3) at what time does the Government contend that the first persons approached the U.S. Capitol and attack it, (4) at what time does the Government contend that Harrelson and his co-Defendants approach the U.S. Capitol to attack it.

e. Precisely (1) identify, although you may do so by designations or coded identities to protect their safety and privacy, any and all U.S. Capitol Police officer or other law enforcement officer whom Kenneth Harrelson or his other co-Defendants brushed past, assaulted, battered, struck, injured, touched without consent, jostled or the like before, while entering, while inside, or while leaving the U.S. Capitol building, and (2) identify

each person who committed any of the foregoing against such officers from the time the Government alleges that Harrelson and his co-Defendants entered the U.S. Capitol building until they exited the building. (Note that the parties have used the word "assault" in its sense of a battery and not in the technically correct meaning of causing apprehension. The Court does not limit at this time the arguments or proof, but merely notes that the references made tend to fall in to common usage rather than the technically accurate sense of the words assault vs. battery.)

f. Precisely (1) identify, although you may do so by designations or coded identities to protect their safety and privacy, any and all law enforcement officers whom the Government contends were injured by someone on the afternoon of January 6, 2021, at or near the U.S. Capitol, and (2) identify the actual persons whom the Government alleges injured each law enforcement officer. The Court recognizes the possibility that some assailants of law enforcement could be as of yet unidentified, that is known to exist and known to have battered one or more officers yet whose legal names are not known. But the identification must specify whether the Government contends that Defendant Harrelson or his co-Defendants committed any battery and injury of any law enforcement officer.

g. For the purpose of identifying witnesses who could tend to exonerate Harrelson on one or more elements of one or more crimes of which he is charged, provide the proper legal name and any known contact information and residential or other address.

h. Names and any known contact information of the persons identified in the pleadings filed by Harrelson at Docket Number in 225-1, 225-2 and 225-3.

i. Names and any known contact information of the persons identified in the pleadings

    filed by Harrelson at Docket Number in 225-1, 225-2 and 225-3.

j.  All other information concerning the persons identified in the pleadings filed by Harrelson at Docket Number in 225-1, 225-2 and 225-3..

k.  The proper legal name and any contact information of the person nick-named for investigative purposes as #FreshmanFlagger and the person shown in the video by Jayden-X under Harrelson's Specific Request H.

l.  Any and all communications, messages, radio traffic, analyses, conclusions, proposals of action, opinions, recommendations, text messages, email messages, or the like including any threat assessment by the U.S. Capitol Police, the Federal Bureau of Investigation, the Secret Service, Metropolitan Police Department of the District of Columbia or other law enforcement agencies concerning any perceived threats and security arrangements for January 6, 2021.

m.  Records showing (1) when the USCP and other agencies started to decide that there was a threat possibly requiring the Joint Session of Congress to be recessed, (2) the role of the search for more pipe bombs played, (3) when exactly the USCP decided that the Joint Session of Congress should recess, and (4) from what threat exactly.

n.  As requested by proposed expert witnesses:

➢ Surveillance video to look for suspicious actors at:

- The Hallways between the Senate entrance (breached at 2:13 p.m.) and the Senate Coach entrance, that Coach entrance from the inside, in the Hallway outside the Senate Chamber between 2:12 and 2:45 p.m.;

- The Columbus Doors, their foyer, and the Rotunda between 2:15 p.m. and the time that the defendant(s) all leave the Capitol;

- Statuary Hall between 2:15 p.m. and the time when the defendant(s) all leave the Capitol or 3:00 p.m., whichever comes later; and

- o The room between Statuary Hall and the House Chamber as well as the hallways that connect that room and the Speaker's Lobby.

➢ Discussions with Capitol Police decision makers about key events and their timing, such as:

- o When and what rationale was decided on to evacuate the Senate;

- o When and what rationale was decided on to lock down the House and then to evacuate it;

- o What rationale was involved in decisions to send USCP Civil Disturbance Units to the House Side, to the Rotunda, deployments that occurred at 2:18 p.m., according to the Senate Staff report on January 6

- o and why these units were not sent to the East Front outside or inside the Columbus doors or to the areas near the Senate when that Chamber had still not been entirely evacuated.

- o Whether the Capitol police believed that there was an active shooter event occurring after rioters broke windows set in the House Chamber Entrance inner doorway and what they did as a result of that event, especially whether that was transmitted over the USCP channels.

- o Whether there were any USCP engaged in searching the building as opposed to trying to control rioters before the House Gallery was fully evacuated at 2:17 p.m., according to the Senate Staff Report on January 6.

➢ The opportunity to depose individual USCP officers who may have observed the actions and tactics of these suspicious actors, to include:

- o Their discussions that took place with certain actors at the Middle Stair level of the Northwest Stairs from about 2:00 p.m. when the police line stabilized until the line was broken about 2:09 p.m. (there might be MPD officers too that may have some of this information).

- o Actions by other members of that crowd and whether they match our list of suspicious actors.

- o Similar information for officers who took part near the Senate Coach Entrance and in the Hallway near the Senate Chamber.

- o Similar information for officers that engaged with the rioters outside the Main Entrance to the House, starting about 2:28 p.m. and ending when those officers left.

- o Similar information for a House Sergeant at Arms official who interacted with the same crowd.

- o Information from that same official on what took place after he left that area near the Main Entrance to the House until he was just about to enter the House Speaker's lobby.

➢ Details about the physical security features associated with the Columbus doors and their evolving status from the time that it was recognized that something unexpected was taking place until the defendant(s) left the Capitol.

- o Discussion with the alarm station and personnel who were monitoring from that location events at that door and perhaps controlling door locks to open or lock that door.

- o Ability to visually inspect the installation of security elements immediately outside and inside that doorway and to find out information about the makes and models of the equipment.

o. So as to be positioned to complete a final report access for as many as 20 video reviewers with full access to Evidence.Com. To complete the expert report by the second week of September deadline, the experts require maximum access and Suspicious Actors must be tracked backwards reaching final operational destinations using CCTV footage.

LET IT BE FURTHER ORDERED AND ADJUDGED THAT the names and contact information of potential witnesses shall be provided to counsel privately, under the protective order, although the prosecution may disclose information already disclosed such as for persons also charged with criminal allegations,

LET IT BE FURTHER ORDERED AND ADJUDGED THAT the technical specifications and details of the mechanisms controlling and moving the Columbus Doors or other details of the U.S. Capitol building and surrounding grounds and facilities may be communicated privately to counsel under the Protective Order, although the Court recognizes that many maps and architectural drawings of the U.S. Capitol building are publicly available. The Court does not seek to imply

anything untoward by the public availability of any information independently of this case. However, where the Government believes information was not already public before January 6, 2021, it is not required by this Order to disclose it beyond Defense counsel pursuant to the Protective Order.

LET IT BE FURTHER ORDERED AND ADJUDGED THAT documents or information exclusively within the possession of the U.S. Government must be disclosed if it is likely to contain or lead to the discovery of (including identifying witnesses):

    i)      Evidence of actual innocence of the charges

    ii)     Evidence of an alternative explanation or cause or otherwise raising reasonable doubt on the standard of a defendant is presumed innocent until proven guilty beyond a reasonable doubt.

    iii)    Evidence that a defendant might be guilty of a lesser offense only

    iv)    Evidence of an affirmative defense

    v)     Evidence of the credibility of prosecution witnesses on impeachment

    vi)    Mitigating factors arguing for imposition of a lesser sentence

Dated:    August _____, 2022

                                            Amit Mehta, U.S. District Court Judge