UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.  )<br>)<br>STEWART RHODES, et. al.,  )<br>)<br>)<br>**Defendants**  )<br>) | Case No. 22-cr-00015-APM |

**DEFENDANT ROBERTO MINUTA'S MOTION *IN LIMINE* TO PRECLUDE ADMISSION UNDER RULE 801(D)(2)(E) OF STATEMENTS BY NORTH CAROLINA OATH KEEPERS AFTER NOVEMBER 15, 2020.**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

1

Defendant Roberto Minuta, through his Counsel of Record William L. Shipley, hereby respectfully moves this Court to preclude the admission of hearsay statements by any members of the North Carolina Oath Keeper chapter made on or after November 15, 2020, on the basis that those individuals had withdrawn from any alleged conspiracy that might have existed as of that date.

During the first trial involving the severed Defendants, testimony was given by witnesses called by both the Government and the Defendants who testified about the events of the "Million MAGA March" ("MMM") on November 14, 2020. Those witnesses included John Zimmerman, John Roeper, and defendant Thomas Caldwell. Zimmerman was called as a witness by the Government.

The Court will recall that the consistent testimony of each was that Defendant Stewart Rhodes was extremely displeased with the decision by North Carolina Chapter leader Doug Smith ("Ranger Doug") on November 14 to withdraw his security detail from the District of Columbia prior to confirmation at the end of the MMM event that all persons who may have wanted Oath Keepers' assistance were safely out of the city.

Rhodes attacked the judgment and decision-making of the North Carolina Chapter leader Smith during a verbal tirade in front of a crowd of Oath Keepers at the rural Virginia farm of Defendant Thomas Caldwell in the early evening of November 14, after the groups had assembled for an "After Action Report."

"At the time, we were all – those of us that were left were pretty upset with how things actually transpired after the fact.

When he [Rhodes] arrived there, we went into the AAR [After Action Report]. He had – basically was, for lack of a better term, badmouthing Ranger Doug, saying that he made the wrong decision and we were supposed to stay out there and he'll never make another decision again type comments.

And it was pretty loud."

October 6, 2022, Trial Transcript p. 1922, lines 1-9.

Q. No, I don't need the whole story. I'm just establishing that there was clearly bad blood between Mr. Rhodes and Mr. Smith at this point?

A. Generated that day, yes.

Q. Yes, sir.
And I accept that.
Would you agree with me that fundamentally at that moment, that there was an immediate split between the Oath Keepers?

A. That day, yes, sir….
I don't even know that he had to say anything because that's how obvious it was.

October 6, 2022, Trial Transcript p. 1940, lines 5-20.

Defendant Caldwell remained in contact with North Carolina Oath Keeper Paul Stamey in the days following November 14, and learned that the North Carolina Chapter voted unanimously to cease following the national organization and leadership of Stewart Rhodes as a result of the episode. jBoth Caldwell and North Carolina Oath Keeper, and retired FBI Special Agent, John Roeper testified to such a vote having been taken.

The indictment refers multiple times to the "plan" which is the basis of the charged conspiracies as being the "Rhodes Plan." Notwithstanding the fact that North Carolina Oath Keepers came to Washington D.C. on January 6,

3

2021, as a "QRF", there is no evidence that it did so in coordination with Rhodes. In fact, the evidence was that Rhodes only acknowledged that North Carolina Oath Keepers would be coming for the "Stop the Steal" march after that group had announced on its own that it would be doing so.

No evidence was offered by the Government to contradict the testimony about the severing of the relationship between the North Carolina Chapter and after the November event. The Government offered no evidence of a rapprochement between Rhodes and the North Carolina Chapter that would support a finding by a preponderance of the evidence that anyone from the North Carolina Chapter had agreed to be a member of the charged conspiracies.

As a result, there is no longer a factual basis to conclude that the members of the North Carolina chapter were unindicted co-conspirators on or after November 15, 2020. As such, there is no basis to admit any statements, communications or messages by any such individual under Rule 801(d)(2)(E).

Dated: December 11, 2022         Respectfully submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

4