IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 22-cr-15 (APM) |
| : | |
| ROBERTO MINUTA, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY CONDITIONS OF RELEASE**

On April 1, 2023, defendant Roberto Minuta moved to ease the restrictions the Court imposed upon maintaining his release pending sentencing. ECF 509. The government opposes Minuta's request.

On January 23, 2023, a jury found Minuta guilty of four felony charges: (1) seditious conspiracy to use force to prevent, hinder, or delay the execution of any law of the United States, in violation of 18 U.S.C. § 2384; (2) conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k); (3) obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); and conspiracy to prevent Members of Congress from discharging their duties, in violation of 18 U.S.C. § 372. ECF 450. Minuta's sentencing is scheduled to take place over two days, including May 24 and June 1, 2023. ECF 468. Through its verdict, the jury found at a minimum that Minuta and others conspired to oppose the transfer of presidential power by force, including by conspiring to obstruct, and actually obstructing, the certification of the electoral college vote on January 6 and to use force, intimidation, or threat to prevent Members of Congress from discharging their duties that day.

The evidence at trial established how Minuta and his co-conspirators went about committing these crimes. As early as November 8, 2020, after the presidential election, Minuta

took to the internet and the Oath Keepers' electronic communications hub, RocketChat, to call on Oath Keepers and others to get "provisions and gear" ready for any "call[] to action," and to prepare to "OVERTAKE the streets in massive numbers." Gov. Exh. 6773 (Msg. 2200.2). As Minuta predicted, Stewart Rhodes issued a call to action, and Minuta answered. By December 18, 2020, Minuta understood from Rhodes that it was "go time" and that the "time for peaceful protest [was] over." *Id*. (Msg. 245.T.1.1). Armed with that knowledge, Minuta accepted Rhodes's late December invitation to the "DC OP: Jan 6 21" Signal group chat that, in Rhodes's words, was for "all leadership." Gov. Exh. 9514 (Msg. 1.S.159.108). Then, at 3:14 p.m. on January 6, the day and time the United States Congress was lawfully required to be at the Capitol and certifying the 2020 Presidential Election, Minuta led other Oath Keepers to the Capitol where they stormed inside. Gov. Exhs. 1508; 3500.2; 3500.12; 3501.15-18. According to Minuta, he went to the Capitol to join the "war in the streets" and to help the "patriots" against the "DC Police." Gov. Exh. 1508. When he got there, he and other Oath Keepers pushed past multiple law enforcement officers to get deeper into the building and closer to the Members of Congress, screaming that it was "their f**king building." *Id*. Afterward, Minuta deleted from the DC OP: Jan 6 21 group chat certain videos depicting co-conspirators, including himself, inside the Capitol that he explained had "[c]ouple faces exposed," Gov. Exh. 9652 (Msg. 1.S.159.1494), and then discarded his entire phone. 01/05/23 PM Tr. at 3239.

After the jury found Minuta guilty, the government moved the Court to detain him pending sentencing pursuant to the presumption of detention under 18 U.S.C. § 3143(a)(1). 01/23/23 Tr. at 4766. The Court denied the government's motion but increased Minuta's restrictions while on release to match the most restrictive conditions of his co-defendants on release. *Id*. at 4769-70; *see also* ECF 452. Presumably in light of the nature of the conspiracy, the encrypted electronic

manner in which the leaders of the conspiracy called co-conspirators to action, and Minuta's actions on January 6, the Court noted the importance of limiting Minuta's and others' activity and electronic communications: "[T]he bottom line is . . . 24-house arrest, any weapons, dangerous weapons need to be removed from the home and, *importantly*, the same limitation I placed on electronic communications continues to apply or will apply." *Id*. at 4770 (emphasis added). Accordingly, the Court placed Minuta and his co-defendants on "home incarceration," ECF 452 at 2, and issued a special condition it drafted in paragraph (t) of the Order setting conditions of release: "Defendant is not to have any access to computers, smartphones, tablets, or any device that would allow him to communicate through either encrypted or non-encrypted applications," *id*. at 3.

Minuta now moves to ease his restrictions, requesting both access to the internet and devices capable of electronic communication, ECF 509 at 3, and a downgrade to "home detention" with the ability to leave his residence for "employment or other purposes," *id*. at 4. Neither is appropriate.

According to the Court, the "seriousness of the offenses can't be understated." 01/23/23 Tr. at 4769. Minuta was found guilty of conspiring to forcibly stop the lawful transfer of presidential power. In fact, Minuta personally used force on January 6 to accomplish that criminal goal by pushing through a line of officers with a stolen riot shield and causing some of those officers to gasp for air. Gov. Exh. 1508. He is facing potentially more than twenty years of incarceration at sentencing as a result. 18 U.S.C. §§ 1512, 2384. Especially considering the nature of the charge and that the government anticipates seeking a term of incarceration, there is no basis for the Court to relax Minuta's conditions of release.

Minuta's attempts to minimize his role should fail. His argument, for example, that he became a "lifetime member" of the Oath Keepers because of a tattoo, ECF 509 at 2, ignores the fact that Minuta became an Oath Keeper directly at the hands of Stewart Rhodes. Regardless of why, the evidence was clear Minuta remained in direct communication with Rhodes from the time of his membership all the way through January 6—all the while acting as one of Rhodes's "most trusted men." Gov. Exh. 6773 (Msg. 1.S.209.29). He also falsely claims his encrypted messaging was limited to "one group" and "nothing more than introducing himself to others." ECF 509 at 2. As the Court is aware, Minuta was actively recruiting others on the Oath Keepers RocketChat servers to "prepare" soon after the presidential election. He repeatedly took to Facebook to explain how the presidential election was fraudulent and why "the Second Amendment" (which in his view constituted the use of firearms) was a viable and imminent option to oppose the tyrannical government he viewed as responsible for such corruption. Gov. Exhs. 2004.V.4 and 2004.V.6. And, beyond introducing himself, Minuta engaged on the DC OP: Jan 6 21 Signal group chat to offer hotel rooms—which he later reserved for Oath Keepers co-conspirators whom he would lead into the Capitol—and to send and delete videos of them inside the Capitol.

Apart from the evidence introduced at trial, the Court should be aware that before and during trial, Minuta continuously used the internet to disparage the investigation and case against him and other defendants involved in the attack on the Capitol. On Twitter, for example, Minuta referred to the investigation as a "malicious prosecution,"[1] to the defendants as "J6 POLITICAL PRISONERS,"[2] and noted during trial that he "never thought [he'd] see our country so fallen."[3] In fact, the defendant appeared in a Newsmax film titled "Day of Outrage" where he espoused the

---

[1] https://twitter.com/ArtOfWar13/status/1519127776036544522 (April 26, 2022)
[2] https://twitter.com/ArtOfWar13/status/1519245752408621057 (April 27, 2022)
[3] https://twitter.com/ArtOfWar13/status/1600649762323460096 (December 7, 2022)

same views and spread them.[4]  To this day, there remains a Give Send Go linked to his Twitter account[5] that his lawyer has also circulated on Twitter.[6]  The link pushes a false narrative surrounding his charges that it refers to as "absurd accusations":

> Roberto Minuta is one of 11 people in America charged with seditious conspiracy due to the events of Jan 6. . . . These new charges were vindictively added almost exactly on the one year anniversary of the J6 event. . . . The absurdity and extreme politicization of this case is incomprehensible, and will have dramatic and dire effects on the freedom of all Americans if not adequately fought in the courts. . . . This is the government setting the precedent to label patriots, or even people with dissenting views form the official narrative of the totalitarian regime, as domestic terrorists. . . . The Government has been weaponized to destroy dissidents, the J6 persecution and prosecution is how they will set the standard.[7]

Restrictions on internet access have been upheld where internet usage was central to the offense charged.  *See, e.g.*, *United States v. Deatherage*, 682 F.2d 755, 764 (8th Cir. 2012) ("We have repeatedly upheld limited conditions on computer usage and internet access that were related to the offense or to the defendant's history.").  Here, where defendant's use of the internet was part of the charged offense, this condition is appropriate and should be maintained.

So, too, should the defendant's home incarceration status.  Both "home incarceration" and "home detention" are specifically contemplated by the standard Order setting conditions of release.  ECF 452 at 2.  The Court concluded the former was necessary, requiring Minuta to be "restricted to 24-hour-a-day lock-down at [his] residence except for medical necessities and court appearances or other activities specifically approved by the court."  *Id*.  No circumstances have changed since the Court implemented this condition that warrant reconsidering that position.  While Minuta points to difficulties working on his post-trial motions and sentencing materials, those motions requirements and the underlying evidence existed at the time the Court implemented these

---

[4] https://twitter.com/ArtOfWar13/status/1519250102287745029 (April 27, 2022)
[5] https://twitter.com/artofwar13?lang=en
[6] https://twitter.com/shipwreckedcrew/status/1592867413296828419 (November 16, 2022)
[7] https://www.givesendgo.com/minuta

restrictions. And Minuta's counsel has already managed to file multiple post-trial motions. Notably, the same difficulties would exist should Minuta have been detained pending sentencing. *See United States v. Walker*, 918 F.3d 1134, 1150 (10th Cir. 2019) ("[H]ome confinement itself functions as an alternative to a period of incarceration in prison.").

Now that Minuta has been found guilty of multiple offenses and is awaiting imposition of a sentence, it is his burden to convince the Court, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of the community. 18 U.S.C. § 3143(a)(1). That burden extends to convincing the Court that the conditions of release are too restrictive in light of the charges and the facts behind them. Minuta has not met that burden.

WHEREFORE, the government respectfully requests that the defendant's motion to modify conditions of release be DENIED.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: _____
Troy A. Edwards, Jr.
Assistant United States Attorney
NY Bar No. 5453741
Alexandra Hughes
Jeffrey S. Nestler
Kathryn L. Rakoczy
Assistant United States Attorneys
Louis Manzo
Trial Attorney, U.S. Department of Justice